(89 Misc. Rep. 611)

### GABRIEL v. OPOZNAUER et al.

(City Court of New York, Trial Term.   March 20, 1915.)

1. CONTRACTS ⬤⟶10—MUTUALITY—CONTRACT OF EMPLOYMENT.
   A contract of hiring is not void for want of mutuality where plaintiff, the servant, entered into performance of her duties, and would have completed, but for defendants' breach, because it did not contain any words expressly requiring plaintiff to perform; it appearing that the contract was one for services for a year and that defendants specified the grounds for discharge.
   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. ⬤⟶10.]

2. MASTER AND SERVANT ⬤⟶8— CONTRACT OF EMPLOYMENT—CONSTRUCTION.
   A contract of hiring embraced in a letter reciting that defendants engaged plaintiff at a salary of $5,200, to be paid in weekly installments of $100 each, constitutes a contract for a year's services.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 8–10, 17; Dec. Dig. ⬤⟶8.]

Action by Lucille Gabriel against Jack Opoznauer and another.   On motion by defendants to set aside a verdict for plaintiff.   Motion denied.

Wahle & Kringel, of New York City, for plaintiff.
Abraham A. Silberberg, of New York City, for defendants.

RANSOM, J.   The verdict is entitled to stand, despite the defendants' motion to set it aside on the twofold grounds:  (1) That the agreement concededly entered into between the parties on October 10, 1912, was void for lack of mutuality of undertaking; and (2) that the court erred in permitting the jury to pass on the question whether the agreement of that date was for a period of one year, instead of holding, as a matter of law, that the hiring was terminable, at the defendants' option, at the end of any week.

The facts of the case place it literally on the border line of decision, in a domain which has lately been marked by no little readjustment to the actualities and the integrities of present-day commercial dealing. I have some doubt whether the verdict is sustained by precedents of long standing.   I am not certain that the courts of this state, in Moran v. Standard Oil Co., 211 N. Y. 187, 105 N. E. 217, Marshall v. Sackett & Wilhelms Co., 166 App. Div. 141, 151 N. Y. Supp. 1045, Grossman v. Schenker, 206 N. Y. 466, 100 N. E. 39, Sanford v. Brown Bros., 208 N. Y. 90, 101 N. E. 797, 50 L. R. A. (N. S.) 778, Dixey v. Al. H. Woods Production Co., 88 Misc. Rep. 502, 151 N. Y. Supp. 224, Halpern v. Langrock Bros. Co. (Kings Co. Ct.) 153 N. Y. Supp. 985, and similar pronouncements, have yet gone so far, in giving enforcement to the obvious in commercial transactions and preventing the success of artifice and bad faith.   Of the substantial justice of the verdict, however, and its fundamental accord with the fair spirit of the decisions just cited, I have no doubt, and accordingly deny the defendants' motion.

The defendants had been successful in the manufacture of gowns and costumes in Chicago, and planned to invade the New York field.

For this they needed to be assured of the services of a designer with demonstrated ability in the metropolitan trade, and advertised accordingly. The plaintiff responded and offered herself, met the defendant Opoznauer on one of his preliminary trips to New York, concluded an arrangement with him on October 10, 1912, and went with him to Chicago, pending the establishment of the defendants' business here in December. At the time Opoznauer hired the plaintiff, he had made no investigation as to her representations as to her own ability and experience, and for his own protection dictated, signed, and handed to her a letter memorandum, dated October 10, 1912, as follows:

"Upon your representation as commercial designer and originator of garments, costumes, and dresses, we herewith engage you ·at a salary of five thousand two hundred dollars ($5,200), to be paid in weekly installments of $100, for each week of work conscientiously performed. As we had practically no opportunity to convince ourselves of the correctness of your statements, we engage your services solely upon your own representations which we assume are correct, and should we find that you have misrepresented yourself, our connections are to terminate. We sincerely hope that your connection with our concern will be very successful, and have no reason to doubt that you can become a valuable part of our organization."

The record contains some reference to a signed duplicate of this letter, retained by Opoznauer; but this was not produced on the trial. The conversation of the parties, as well as the tenor of the letter, made it clear that each regarded their arrangement as something far different than terminable at any time at the whim of either, and as Opoznauer handed to the plaintiff the letter which was to protect him in the event he found she had overestimated or misrepresented her ability, he specifically admonished her, "This is for a year." Both parties went ahead under the contract of hiring on that day entered into, and the agreement was fully performed on each side until July 10th of the summer following. The defendants then discharged the plaintiff because of adverse business conditions, and did so through a palpable artifice, which disclosed all too plainly that the defendants considered themselves obligated to employ her until October, unless she was prevailed on voluntarily to leave her position before that time. There was no suggestion in the case that the defendants ever found untrue any representation which the plaintiff made in offering her services, or that her work was in any respect less satisfactory than anticipated. Defendants claimed that they had the right to discharge her, for any reason or no reason, at the end of any week, but that they did not do so. The jury rejected the preposterous suggestion that she voluntarily quit.

[1] The contention that, because the memorandum of hiring and discharge conditions which Opoznauer handed the plaintiff contained no words of express covenant on her part, the agreement made between them on October 10th was unenforceable for lack of mutuality, is untenable. Whatever the agreement was as to duration of the employment, there was an agreement, both parties acted on and under it, both performed its terms for most of the contract period claimed by the plaintiff, and the plaintiff was prevented from completing performance only by a discharge under circumstances in no wise con-

templated by any terms of the memorandum prepared by Opoznauer for his own protection on the subject of right to discharge. The whole episode of October 10th, as well as what followed it, was instinct with mutuality of undertaking, the facts disclosed would have given the defendants a basis of suit had the plaintiff quit their employ during the contract term, and defendants may not save themselves by asserting now that the contract did not bind the plaintiff to do anything, when she in fact performed in major part and was prevented from completing performance only by the defendants' refusal to permit her to do so. Marshall v. Sackett & Wilhelms Co., supra; Grossman v. Schenker, supra; Moran v. Standard Oil Co., supra.

[2] The same authorities lead to the conclusion that the hiring was for a year. Probably I would have been warranted in so ruling as a matter of law, construing the letter memorandum of October 10th, alone. "We engage you at a salary of five thousand two hundred dollars ($5,200), to be paid in weekly installments of one hundred dollars," imports 52 weeks' duration; else how could $5,200 be paid in $100 installments weekly? Hotchkiss v. Godkin, 63 App. 468, 71 N. Y. Supp. 629. If the intention was merely to hire the plaintiff at a salary of $100 per week for whatever period the defendants chose to keep her, it would have been easy to say so, and nothing would have been said about a salary of $5,200, to be paid in weekly installments of $100, or about the employers' right of discharge, should any representations be found false. The agreement, it will be noted, was to pay a salary of $5,200, not a salary at a rate of $5,200, per year, as in cases relied on by the defendants, and the plaintiff was discharged before she received the $5,200 stipulated. If it had been intended to give an absolute right to discharge at any time, Opoznauer could readily have so stated, without leaving it to inference, and would hardly have taken pains to create a tissue of provisions negativing the possibility of such an inference. The letter of October 10th is in the defendants' own carefully chosen phraseology and substance and the law should be slow to adopt, after nine months of unstinted performance, an interpretation which would make meaningless and useless the letter's most carefully formulated provisos and render the whole document a "trap," subterfuge, and fraud. Therefore I am inclined to think that, even without the incorporation of the defendants' oral adjoinder that the plaintiff was obligating herself for a year, a yearly contract was made out by the letter memorandum alone; but the developments of the case did not require me to so hold. It seemed perhaps preferable, in view of the border line character of the legal question involved, to buttress the rule of legal construction with the jury's deliberate determination as to what the agreement of October 10th really was, under the tests indicated in the Moran Case, taking into account all the facts brought out as to that hiring. Defendants certainly have no right to complain because the present verdict stands fortified by such a reference to the jury, which reached from all the evidence the same conclusion as the court might justifiably have declared to them as a matter of law.

Submit an order denying the defendants' motion.